## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **EDWIN HARDEE TURLINGTON, II,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 21-CV-0142-CVE-CDL** |
| | ) | |
| **WINSTON H. CONNOR, II,** | ) | |
| **STOCKWELL & CONNOR, PLLC,** | ) | |
| **DELAWARE COUNTY, OKLAHOMA,** | ) | |
| **DELAWARE COUNTY SHERIFF'S OFFICE,** | ) | |
| **HARLAN MAX MOORE, Sheriff,** | ) | |
| **MELVIN GAYLE WELLS,** | ) | |
| **EDDIE JAMES WYANT,** | ) | |
| **WYANT LAW FIRM, PLLC,** | ) | |
| **KENNETH EARL WRIGHT, III,** | ) | |
| **OFFICE OF THE DISTRICT ATTORNEY** | ) | |
| **FOR THE 13TH DISTRICT, Office,** | ) | |
| **NICHOLAS LELECAS,** | ) | |
| **GROVE OKLAHOMA POLICE** | ) | |
| **DEPARTMENT,** | ) | |
| **JERRY BOHANNON, Sgt.,** | ) | |
| **JEFF STOUT,** | ) | |
| **MICHAEL STEVEN REED,** | ) | |
| **CITY OF GROVE, OK. FIRE DEPT.,** | ) | |
| **REUBEN HERNANDEZ,** | ) | |
| **OKLAHOMA HIGHWAY PATROL, Troop L,** | ) | |
| **BILL HOBBS,** | ) | |
| **HAYLEY LNU, Grove Verizon Store Employee,** | ) | |
| **GROVE VERIZON AUTHORIZED** | ) | |
| **RETAILER,** | ) | |
| **VERIZON COMMUNICATIONS, INC.,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Before the Court are twelve motions to dismiss on behalf of nineteen defendants (Dkt. ## 12,

16, 29, 37, 48, 51, 53, 56, 57, 58, 59, 68), defendants' motion to stay discovery (Dkt. # 92), and

plaintiff's motion for clarification (Dkt. # 81).   On March 31, 2021, plaintiff Edwin Hardee Turlington, II filed a complaint alleging numerous claims for relief; specifically: 42 U.S.C. § 1983 claims for false arrest (count 1), malicious prosecution (count 2), conspiracy (count 3), first amendment retaliation (count 4), and equal protection (count 5); a claim under the Racketeer Influenced and Corrupt Organizations (RICO) Act (count 6); and a claim under the Americans with Disabilities Act (ADA) (count 7).[1]

## I.

This case arises out of an April 14, 2014 incident when plaintiff, Edwin Hardee Turlington, II, "caught three men burning something . . . on the Turlington family property."  Dkt. # 2, at 6.  The three men were behind a no-trespassing sign and appeared, to plaintiff, to be burning "components used in a makeshift meth lab"; thus, plaintiff attempted to make "a citizen's arrest."  Id.  One of the men, Darrell Philpott (a nonparty to this suit),"repeatedly called Turlington a 'punk motherfucker', challenged him to fight and grabbed a glass bottle from the ground[.]" Id.  During this confrontation with Philpott, plaintiff shot Philpott in the leg, which plaintiff alleges was in self-defense.  Id.  Philpott and the other men left without calling the police, and plaintiff also left the scene of the shooting and drove to Jay, Oklahoma.  Id.  Once plaintiff had phone reception, he called 911 "to get an ambulance for Philpott and notify the sheriff he was coming in[to] town to make a statement."  Id.

---

[1]     The Court notes that plaintiff, who proceeds pro se, alleges five claims only in his complaint; however, the Court will address plaintiff's claims as seven discrete counts for purposes of clarity and completeness.  Further, because of the numerous motions and plaintiff's pro se status, the Court will evaluate the claims as to all named defendants.

While on his way to the sheriff's office, plaintiff was pulled over by Jay police officer, defendant Bill Hobbs, who "stuck a gun in Turlington's face, put Turlington's face to the pavement and put him in handcuffs." Id. Following his arrest, plaintiff spoke to Detective Frank Miller, and began writing a sworn statement while Miller called defendants Captain Melvin Gayle Wells and Sheriff Harlan Max Moore. Id. at 8. After Miller spoke to defendants Wells and Moore, he arrested plaintiff on suspicion of assault with a deadly weapon. Id.

On April 15, 2014, plaintiff appeared before Judge Alicia Littlefield, and defendant Kenneth Eugene Wright, III appeared on behalf of the State of Oklahoma.[2] Dkt. # 12-1, at 1. Plaintiff was advised that bond would be set once the Court received a probable cause affidavit, and he was then remanded to the custody of the Delaware County Sheriff. Id. On April 16, 2014, defendant Winston H. Connor, II entered his appearance as plaintiff's defense counsel. Id. at 2. Plaintiff was released on appearance bond on April 17, 2014. Id. at 5-7. On July 3, 2014, defendant Eddie Wyant, Delaware County district attorney, filed a one-count information in state court charging plaintiff with assault and battery with a dangerous weapon. Id. at 10-11. That same day, defendant Wells filed a probable cause affidavit in state court, which was reviewed by Judge Littlefield, who found that probable cause existed at the time of plaintiff's arrest. Id. at 12-19.

On December 8, 2015, Judge Littlefield held a preliminary hearing, at which defendant Nicholas Lelecas appeared on behalf of the state, and defendant Connor appeared on behalf of

---

[2]     Because plaintiff's complaint directly references the probable cause affidavit and court proceedings, and the related allegations are central to plaintiff's claims, the Court will consider certain documents in addition to the factual allegations in the complaint—specifically those provided by defendants Lelecas and Wright in Dkt. # 12-1 and Dkt. # 12-2—in evaluating the motions to dismiss. See Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009).

plaintiff, who was also present at the hearing. Id. at 103-04.  Philpott was called as a witness by

defendant Lelecas and testified as to the events of April 14, 2014--the date plaintiff shot him in the

leg--and was subject to cross-examination by plaintiff's attorney, defendant Connor.  Id. at 105-30,

Dkt. # 12-2, at 1-93.  Plaintiff alleges that, at this hearing, defendant Lelecas "entered known

falsehoods into the record repeatedly[,]" and that defendant Connor "failed to impeach Philpott,

despite 1) his many felony convictions and moral turpitude convictions, 2) the fact [that] Philpott

could not identify Turlington in court, and 3) the fact [that] Philpott perjured himself multiple times

during the [p]reliminary [h]earing."  Dkt. # 2, at 13-14.

On February 14, 2018, defendant Connor filed a motion to withdraw as plaintiff's counsel,

because Connor "completed [his] contractual obligations and [the withdrawal was] at [d]efendant's

request," which Judge Littlefield granted.  Dkt. # 12-2, at 109-10.  On July 1, 2019, defendants

Wright and Lelecas moved to dismiss the charge against plaintiff without prejudice because Philpott

"failed to maintain meaningful contact/communication with the District Attorney's Office."  Id. At

121.  Judge Littlefield granted Wright and Lelecas's motion on July 2, 2019.  Id.  Plaintiff alleges

in his complaint that defendants Wright and Lelecas "lied by omission on the [m]otion to [d]ismiss,"

because they did not state that "Philpott was avoiding contact because he was once again a criminal

fugitive."  Dkt. # 2, at 15.

Much of the remainder of plaintiff's complaint focuses on 1) allegations of abuse of police

and prosecutorial discretion, naming defendants Wright and Moore; 2) a dispute between plaintiff

and a contractor, which plaintiff brought to Grove Police Sergeant, defendant Jerry Bohannon, who

"refused to get further involved"; 3) disputes over Facebook posts and messages involving plaintiff,

defendant Jeff Stout, a retired Grove City fire inspector, defendant Reuben Hernandez, an Oklahoma

Highway Patrol trooper, and Grove Fire Chief, defendant Michael Steven Reed; and 4) a dispute with a Grove, Oklahoma Verizon Wireless store, and the store's employee, Hayley LNU. Id. at 15-25. Plaintiff alleges that these disputes arise from "local law enforcement and [the district attorney] refusing to prosecute people who commit crimes against Turlington, [and] locals (including public officials) now believ[ing] they can openly threaten Turlington in public forums without being held accountable." Id. at 23. And, plaintiff alleges, because "the public is aware of Delaware County falsely arresting Turlington, and that retired public officials can openly threaten Turlington, some citizens believe that calling the police on Turlington for any trivial matter is acceptable." Id. at 24.

Finally, on March 31, 2021, plaintiff filed the instant complaint, naming as defendants: 1) Winston H. Connor, II; 2) Stockwell & Connor, PLLC; 3) Delaware County, Oklahoma; 4) Delaware County Sheriff's Office; 5) Sheriff Harlan Max Moore; 6) Melvin Gayle Wells; 7) Eddie James Wyant; 8) Wyant Law Firm, PLLC; 9) Kenneth Earl Wright, III; 10) Office of the District Attorney for the 13th District (ODA13); 11) Nicholas Lelecas; 12) Grove Oklahoma Police Department; 13) Sgt. Jerry Bohannon; 14) Jeff Stout; 15) Michael Steven Reed; 16) City of Grove OK. Fire Dept.; 17) Reuben Hernandez; 18) Oklahoma Highway Patrol, Troop L (OHP); 19) Bill Hobbs; 20) Grove Verizon Store Employee Hayley; 21) Grove Verizon Authorized Retailer; and 22) Verizon Communications, Inc.. Id. at 1. Defendants filed motions to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim (Dkt. ## 12, 16, 29, 37, 48, 51, 53, 56, 57, 58, 59, 68), arguing that plaintiff failed to plead sufficient facts to plausibly state a claim under 42 U.S.C. § 1983 (counts 1-5), RICO (count 6), or the ADA (count 7). Further, in addition to moving to dismiss pursuant to Rule 12(b)(6), defendants Hernandez (defendant 17), Wyant (defendant 7), Wyant Law Firm, PLLC (defendant 8), ODA13 (defendant 10), OHP (defendant 18), Wright (defendant 9), and Lelecas

(defendant 11) move to dismiss pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction. Defendants argue that plaintiff did not plead sufficient facts to establish subject-matter jurisdiction. <u>See</u> Dkt # 59, at 1-2 (Hernandez); Dkt. # 48, at 1-2 (Wyant); Dkt. # 51, at 1-2 (Wyant Law Firm, PLLC); Dkt. # 53, at 1 (ODA13 and OHP); Dkt. # 12, at 3 (Wright and Lelecas).

## II.

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." <u>Id.</u> (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." <u>Id.</u> at 562. Although decided within an antitrust context, <u>Twombly</u> "expounded the pleading standard for all civil actions." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 683 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the claimant. <u>Twombly</u>, 550 U.S. at 555; <u>Alvarado v. KOB-TV, L.L.C.</u>, 493 F.3d 1210, 1215 (10th Cir. 2007); <u>Moffett v. Halliburton Energy Servs., Inc.</u>, 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. <u>Erikson v. Pawnee Cty. Bd. of Cty. Comm'rs</u>, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments

6

are insufficient to state a claim upon which relief can be based."  Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

Motions to dismiss under Fed. R. Civ. P. 12(b)(1) "generally take one of two forms. The moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell, 363 F.3d 1072, 1074 (10th Cir.2004) (internal citation and quotations omitted).  In analyzing a Rule 12(b)(1) motion to dismiss on the basis of a facial attack, courts "apply the same standards under Rule 12(b)(1) that are applicable to a Rule 12(b)(6) motion to dismiss for failure to state a cause of action."  Muscogee (Creek) Nation v. Okla. Tax Comm'n, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010).  Thus, because the defendants' Rule 12(b)(1) motions are based on a factual basis, the Court will address all grounds for dismissal under 12(b)(6).

In applying these standards, the Court is mindful that plaintiff proceeds pro se. While pro se pleadings must be liberally construed and held to less stringent standards than pleadings drafted by lawyers, Haines v. Kerner, 404 U.S. 519, 520 (1972), a district court should not assume the role of advocate. Hall, 935 F.2d at 1110; United States v. Pinson, 584 F.3d 972, 975 (10th Cir. 2009); Garrett v. Selby Connor Maddux & Janer, 425 F.3d 836, 840 (10th Cir. 2005). Moreover, even pro se plaintiffs are required to comply with the "fundamental requirements of the Federal Rules of Civil and Appellate Procedure" and substantive law, and the liberal construction to be afforded does not transform "vague and conclusory arguments" into valid claims for relief. Ogden v. San Juan County, 32 F.3d 452, 455 (10th Cir. 1994).

## III.

Defendants raise the following grounds for failure to state a claim under Rule 12(b)(6):

*a.*     *Sovereign Immunity*

Under the Eleventh Amendment, absent its consent, a state is immune from private citizen suits brought in federal courts unless Congress "unequivocally" intended to abrogate the state's sovereign immunity "pursuant to a valid exercise of power[.]" Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54-59 (1996) (internal quotations omitted).  Oklahoma has, by statute, explicitly preserved its sovereign immunity rights under the Eleventh Amendment.  OKLA. STAT. ANN. tit. 51, § 152.1 (1985).  Further, sovereign immunity under the Eleventh Amendment includes not only the state, but its agencies and departments.  Pennhurst St. Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). "This jurisdictional bar applies regardless of the nature of the relief sought."  Id.

The Supreme Court has held that 42 U.S.C. § 1983 "does not abrogate the States' Eleventh Amendment immunity[,]" Quern v. Jordan, 440 U.S. 332, 340 (1979).  As to RICO, "[t]he legislative history of the RICO Act, as did the Civil Rights Act, fails to indicate that Congress considered and firmly decided to abrogate the Eleventh Amendment immunity of the States."  Productions & Leasing v. Hotel Conquistador, Inc., 573 F. Supp. 717, 720 (D. Nev. 1982), aff'd, 709 F.2d 21 (9th Cir. 1983); see also Smith v. Okla. Tax Comm'n, No. CIV-09-594-F, 2009 WL 10671777, at *3 (W.D. Okla. 2009); Molina v. State of N.Y., 956 F. Supp. 257, 260 (E.D.N.Y. 1995).  "Without a clear showing that Congress intended abrogation of the Eleventh Amendment governmental immunity, [the] Court will not infer that the RICO Act deprives the State of [Oklahoma] of its protection."  Productions & Leasing, 573 F. Supp. at 720.  Finally, although Congress explicitly intended for Title II ADA claims to abrogate sovereign immunity, the Supreme Court instructs courts

to evaluate whether abrogation is proper on a case-by-case basis, Tennessee v. Lane, 541 U.S. 509, 527 (2004), as applied to the scope of the constitutional right at issue, Bd. of Trs. of the U. of Ala. v. Garrett, 531 U.S. 356, 365 (2001).

Here, plaintiff named as defendants the Office of the District Attorney for the 13th District (ODA13) and Oklahoma Highway Patrol (OHP).  Dkt. # 2.  The Tenth Circuit has held that a district attorney is a state officer; thus, plaintiff's claims against ODA13 are claims against the State of Oklahoma.  Laidley v. McClain, 914 F.2d 1386, 1392 (10th Cir. 1990), superseded on other grounds as recognized in Dodger's Bar & Grill, Inc. v. Johnson Cty. Bd. of Cty. Comm'rs, 32 F.3d 1436, 1440 (10th Cir. 1994).  Additionally, OHP[3] "is an arm of the State of Oklahoma and therefore is treated as the state for purposes of sovereign immunity and the Eleventh Amendment."  Pettigrew v. Oklahoma ex rel. The Okla. Dep't of Pub. Safety, 722 F.3d 1209, 1212 (10th Cir. 2013) (citing Alden v. Maine, 527 U.S. 706, 756 (1999)).  Therefore, the Court finds that ODA13 and OHP are immune from suit as to the § 1983 claims (counts 1-5) and the RICO claim (count 6) because 1) ODA13 and OHP are arms of the state; 2) Oklahoma has not waived its sovereign immunity under the Eleventh Amendment; and 3) Congress has not abrogated sovereign immunity for § 1983 and RICO claims.  The Court further finds that plaintiff did not plead sufficient facts to establish an ADA claim against ODA13 or OHP.  Specifically, plaintiff does not plead with specificity what type of ADA claim he is asserting, who he is asserting his ADA claim against, or what conduct by defendants, if any, constitutes an ADA violation and entitles plaintiff to relief.  See Dkt. # 2, at 28-

---

[3]     As indicated on the Oklahoma Department of Public Safety (DPS) website, Okla. Dep't of Pub. Safety, Mission, (May 11, 2021), https://oklahoma.gov/dps/about-dps/mission.html, OHP is a division of DPS, which the Tenth Circuit has explicitly held is an arm of the state. Pettigrew, 722 F.3d at 1212.

30.   Thus, the Court is unable to evaluate whether abrogation would be proper as applied to this plaintiff's ADA claim.  Notwithstanding, based on the facts alleged in the complaint, the Court finds that amending the ADA claim would be futile as no set of plausible facts could link discrimination based on plaintiff's disability to the circumstances giving rise to his claims for relief.  In sum, the Court finds that ODA13 and OHP's motion to dismiss should be granted, and plaintiff's claims against ODA13 (defendant 10) and OHP (defendant 18) should be dismissed.

      *b.*       *§ 1983 Claims*

42 U.S.C. § 1983 provides a cause of action against any "person who, under color of statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States  . . . thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  Because it is axiomatic that the constitution's protections apply only to governmental actors, "[t]he fundamental inquiry is whether [a defendant] is a governmental actor to whom the prohibitions of the Constitution apply." San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm., 483 U.S. 522, 542 (1987).  "Where a litigant seeks to hold a private actor accountable as a state actor for constitutional deprivations, [the Tenth Circuit has] applied various analyses and referred to them as the 'nexus test,' the 'public function test,' the 'joint action test,' and the 'symbiotic relationship test.'" Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., 956 F.3d 1228, 1235 (10th Cir. 2020) (quoting Wittner v. Banner Health, 720 F.3d 770, 775 (10th Cir. 2013)). "At the heart of each test is 'whether the conduct allegedly causing the deprivation of a federal right [is] fairly attributable to the State.'" Id. (quoting Wasatch Equality v. Alta Ski Lifts Co., 820 F.3d 381, 387 (10th Cir. 2016)). Thus, to state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the

Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48; Anderson v. Suiters, 499 F.3d 1228, 1232–33 (10th Cir. 2007).

"The purpose of § 1983 is to deter state actors from using the badge of authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161 (1992).   In the case of a municipal entity, the "under color of state law" element requires that the constitutional deprivation occurred pursuant to official policy or custom. See Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978). A municipal entity may be held liable for an act it has officially sanctioned, or for the actions of an official with final policymaking authority. Pembaur v. City of Cincinnati, 475 U.S. 469, 480, 482-83 (1986); see also City of St. Louis v. Praprotnik, 485 U.S. 112, 127-28 (1988).

   i.     No State Action

To state a claim under § 1983, plaintiff is required to plead sufficient plausible facts that the named defendants' conduct constituted state action, that is, "the conduct allegedly causing the deprivation of a federal right [is] fairly attributable to the State."   Wasatch Equality, 820 F.3d at 387 (internal quotations omitted).  Here, the Court finds that plaintiff has not, and cannot, plead sufficient facts to establish that defendants Winston H. Connor, II (defendant 1), Stockwell & Connor, PLLC (defendant 2), Wyant Law Firm, PLLC (defendant 8), Jeff Stout (defendant 14), Reuben Hernandez (defendant 17), Hayley LNU (defendant 20), Grove Verizon Authorized Retailer (defendant 21), and Verizon Communications, Inc. (Defendant 22) were acting under color of state law.  Specifically, Connor is a private attorney, and Stockwell & Connor, PLLC and Wyant Law Firm, PLLC are private law firms.  The Tenth Circuit has held that "private attorneys, by virtue of being officers of

the court, do not act under color of state law within the meaning of section 1983." Barnard v. Young, 720 F.2d 1188, 1189 (10th Cir. 1983) (citing Polk Cty. v. Dodson, 454 U.S. 312, 318 (1981)). Because private attorneys are not state actors, it follows that private law firms are also not state actors within the meaning of § 1983.

Next, plaintiff alleges that Jeff Stout, a retired Grove City Fire Inspector, published numerous Facebook posts antagonizing plaintiff. Dkt. # 2, at 24. However, Stout's conduct as a private actor posting on a social media site does not constitute state action, nor is Stout's conduct capable of causing plaintiff a constitutional deprivation. Plaintiff also pled that Reuben Hernandez, an OHP trooper, sent a Facebook message to plaintiff's friend, a third party. Id. Plaintiff alleges that in the Facebook message, Hernandez wrote to the third party that he heard plaintiff "goes after whatever cops talk[] against him, so if he comes after [Hernandez] then [he'll] assume the [third party] told [plaintiff]." Id. Hernandez personally sending a Facebook message to a third party is not conduct fairly attributable to the state. And, plaintiff has not pled sufficient facts to establish that Hernandez's conduct caused a deprivation of plaintiff's constitutional rights.

Finally, the Grove Verizon Wireless retail store, its employee, Hayley LNU, and Verizon Communications, Inc. are not state actors. Plaintiff mentions Verizon and the Verizon store employee only once in his complaint; specifically, plaintiff alleges that after he asked to speak to the Verizon store manager, "an employee named Hayley went to the back of the store, closed the door and called the police." Id. at 25. The store employee is a private citizen and the other two defendants are private businesses. Plaintiff has not pled sufficient facts to establish that these defendants' conduct as private actors caused a constitutional deprivation that is fairly attributable to the state.

12

In sum, the Court finds that there exists no set of plausible facts that plaintiff could plead to establish that these defendants were acting under color of state law; thus, all § 1983 claims (counts 1-5) against defendants Winston H. Connor, II (defendant 1), Stockwell & Connor, PLLC (defendant 2), Wyant Law Firm, PLLC (defendant 8), Jeff Stout (defendant 14), Reuben Hernandez (defendant 17), Hayley LNU (defendant 20), Grove Verizon Authorized Retailer (defendant 21), and Verizon Communications, Inc. (Defendant 22) should be dismissed.

ii.     Prosecutorial Immunity

A state prosecutor is entitled to absolute immunity from suit for civil damages under § 1983 when such suit is based on the prosecutor performing functions "intimately associated with the judicial phase of the criminal process, . . . [which includes] initiating a prosecution and [] presenting the State's case[.]" Imbler v. Pachtman, 424 U.S. 409, 430-31 (1976); Gagan v. Norton, 35 F.3d 1473, 1475 (10th Cir. 1994). "[P]rosecutors are entitled to absolute immunity from liability for their decision to file charges. . . . [Moreover,] [s]ome functions–like filing charges–are inherently related to a prosecutor's role as an advocate, and therefore protected by absolute immunity whether or not probable cause exists." Warnick v. Cooley, 895 F.3d 746, 751 (10th Cir. 2018). And, prosecutors enjoy absolute immunity from liability for "functions within the continuum of initiating and presenting a criminal case, such as filing charges [and] seeking an arrest warrant[.]" Snell v. Tunnell, 920 F.2d 673, 693 (10th Cir. 1990). Finally, "supervisory prosecutors are immune in a suit directly attacking their actions related to an individual trial[.]" Van de Kamp v. Goldstein, 555 U.S. 335, 345-46 (2009).

In his complaint, plaintiff named district attorney Kenneth Earl Wright, III (defendant 9) and assistant district attorney Nicholas Lelecas (defendant 11) as defendants. Dkt. # 2. Liberally

construed in the light most favorable to plaintiff, his allegations as to Wright and Lelecas reference prosecutorial functions only, which are entitled to absolute immunity.  For example, plaintiff's complaint devotes approximately four pages to Lelecas's conduct during Philpott's testimony at a pretrial hearing.  Dkt. # 2, at 18-22.  Plaintiff appears to allege that Lelecas's failure to impeach Philpott for testifying dishonestly violated plaintiff's constitutional right to a fair trial.  Dkt. # 2, at 19.  However, Lelecas's direct examination of Philpott at the court hearing is a function intimately associated with the judicial phase in the criminal process.  Although plaintiff does not plead with specificity that his false arrest and malicious prosecution claims are directed at Wright and Lelecas, he does challenge whether there was probable cause at the time of his arrest.  Dkt. # 2, at 26. However, prosecutorial functions--such as initiating a prosecution, presenting the State's case, the decision whether to file or dismiss charges–are protected by absolute immunity despite whether probable cause existed.  This immunity from suit applies to both Lelecas, as the prosecutor directly involved in plaintiff's criminal case, and to Wright, in his supervisory capacity as district attorney. Therefore, the Court finds that defendants Wright and Lelecas are entitled to absolute immunity from suit on the § 1983 claims, and plaintiff's § 1983 claims (counts 1-5) against Wright (defendant 9) and Lelecas (defendant 11) should be dismissed.

iii.    Qualified Immunity

The Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Qualified immunity shields public officials from facing the burdens of litigation and is an immunity from suit, not simply a defense to a plaintiff's

14

claims. Serna v. Colorado Dept. of Corrections, 455 F.3d 1146, 1150 (10th Cir. 2006). The Tenth Circuit applies a two-step analysis to determine if a defendant is entitled to qualified immunity. A plaintiff must prove that the defendant's actions violated a specific constitutional right and, if the plaintiff has shown that a constitutional violation occurred, the plaintiff must show that the constitutional right was clearly established when the conduct occurred. Toevs. v. Reid, 685 F.3d 903, 909 (10th Cir. 2012). A court has the discretion to consider the steps in whatever order is appropriate under the circumstances. Id. at 910 (citing Pearson v. Callahan, 555 U.S. 223 (2009)). Plaintiff bears the burden to prove that his constitutional rights were violated and that the law giving rise to his claim was clearly established at the time the acts occurred. Cox v. Glanz, 800 F.3d 1231, 1246 (10th Cir. 2015); Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001).

Plaintiff names Sheriff Harlan Max Moore (defendant 5), Captain Melvin Gayle Wells (defendant 6), and officer Bills Hobbs (defendant 19) as defendants. Although plaintiff does not plead with specificity which § 1983 claim he is bringing against defendants Moore, Wells, and Hobbs, it appears that plaintiff alleges that his arrest for assault with a deadly weapon was without probable cause. Dkt. # 2, at 26. Probable cause is "a fluid concept–turning on the assessment of probabilities in particular factual contexts[;]" thus, looking at the totality of the circumstances guides the probable cause determination. Illinois v. Gates, 462 U.S. 213, 232 (1983). Plaintiff states in his complaint that he shot Philpott with a gun, and that, prior to his arrest, he called 911 and notified the sheriff about what happened. Dkt. # 2, at 7. Plaintiff's own statements establish that an officer in defendants Moore, Wells, and Hobbs's position could reasonably conclude that probable cause existed to arrest defendant for assault with a deadly weapon. Moreover, Judge Littlefield reviewed the probable cause affidavit for arrest without warrant (Dkt. # 12-1, at 12-19), and found that "the

15

[affidavit] contains sufficient facts showing probable cause for [plaintiff's] arrest existed at the time of the arrest." Dkt. # 12-1, at 19. Therefore, the Court finds plaintiff is unable to meet his burden to show that his constitutional rights were violated, and these defendants are entitled to qualified immunity from suit on plaintiff's § 1983 claims. Plaintiff's § 1983 claims (counts 1-5) against Moore (defendant 5), Wells (defendant 6), and Hobbs (defendant 19) should be dismissed.

> iv.     § 1983 Claims Against a Municipality

To state a claim against a municipal entity, plaintiff must allege (as with all § 1983 claims): 1) that a right secured by the Constitution or laws of the United States was violated; and 2) that the alleged violation was committed by a person acting under color of state law. See West, 487 U.S. at 48. However, in the case of a municipal entity, the "under color of state law" element requires that the constitutional deprivation occurred pursuant to official policy or custom. Monell, 436 U.S. at 694. A plaintiff "must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Barney v. Pulsipher, 143 F.3d 1299, 1307 (10th Cir.1998) (quoting Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown, 520 U.S. 397, 404 (1997)).

In order to show that the alleged constitutional deprivation occurred pursuant to an official policy, plaintiff must show that there was a "statement, ordinance, regulation, or decision officially adopted and promulgated by [a municipality's] officers." Lankford v. City of Hobart, 73 F.3d 283, 286 (10th Cir. 1996) (alterations in Lankford) (internal citations omitted). Even in the absence of an official policy, "a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." City of St. Louis v. Praprotnik, 485 U.S. 112,

16

127 (1988) (internal quotations omitted). Generally, "allegations of an isolated incident are not sufficient to show the existence of a custom or policy." Reed v. Ottawa Cty. Sheriff's Dep't, 2010 WL 5209260, *2 (N.D. Okla. Dec. 16, 2010) (citing Fraire v. City of Arlington, 957 F.2d 1268, 1278 (5th Cir. 1992)).

Plaintiff names Delaware County, Oklahoma (defendant 3), Delaware County Sheriff's Office (defendant 4), Grove Oklahoma Police Department (defendant 12), and City of Grove OK. Fire Dept. (Defendant 12) as defendants.[4]  First, "governmental sub-units [such as the sheriff's office, police department, or fire department,] are not separate suable entities" for purposes of § 1983 claims.  Hinton v. Dennis, 362 Fed. App'x 904, 907 (10th Cir. 2010).[5]  This is because these governmental sub-units "lack legal identities apart from the municipality." Ketchum v. Albuquerque Police Dep't, No. 91-2200, 1992 WL 51481, at *2 (10th Cir. 1992).  Therefore, Delaware County Sheriff's Office (defendant 4), Grove Oklahoma Police Department (defendant 12), and City of Grove OK. Fire Dept. (Defendant 12) should be dismissed as defendants as to plaintiff's § 1983 claims (counts 1-5).

Second, plaintiff sparsely mentions Delaware County in his 33-page complaint.  See Dkt. # 2, at 12, 24-25.  To state a claim against Delaware County, plaintiff is required to plead sufficient plausible facts to show there was a deprivation of a constitutional right, and that deprivation occurred pursuant to official policy or custom.  Not only does plaintiff fail to establish that he suffered a

---

[4]    Again, plaintiff does not plead with specificity which claims he is bringing against which defendants, but the Court will evaluate all of plaintiff's § 1983 claims (counts 1-5) as to these defendants.

[5]    Unpublished decisions are not binding precedent in the Tenth Circuit but may be cited for their persuasive value.  See Fed. R. App. 32.1; 10th Cir. R. 32.1.

deprivation of a constitutional right, as discussed in Part III.b.iii supra, but also he fails to point to any Delaware County statement, ordinance, regulation, official decision, or widespread practice constituting a custom or usage. Therefore, the Court finds that plaintiff has failed to state a § 1983 claim against Delaware County (defendant 3), and all § 1983 claims (counts 1-5) should be dismissed.

     v.  No § 1983 Claim Lodged Against Defendants Wyant, Bohannon, and Reed

    First, plaintiff does not plead with specificity any allegations as to Eddie James Wyant's (defendant 7) conduct; thus, the Court finds plaintiff failed to state a § 1983 claim against Wyant. However, even if plaintiff did plead specific facts related to Wyant's role as the district attorney who signed the criminal information charging plaintiff, Dkt. # 12-1, at 10, any plausible claim against Wyant would be barred--filing charges or acting as a supervising prosecutor is entitled to absolute immunity. See Part III.b.ii supra. Therefore, the Court finds that plaintiff's § 1983 claims against Wyant (defendant 7) should be dismissed.

    Second, plaintiff fails to plead sufficient facts to state a § 1983 claim against Grove Police Sergeant Jerry Bohannon (defendant 13) and Grove Fire Chief Michael Steven Reed (defendant 15). Both Bohannon and Reed are mentioned in the body of the complaint only once. See Dkt. # 2, at 17-18 ("Turlington went to Grove Police Sergeant Jerry Bohannan [sic], who after looking at the same texts Lelecas had [regarding a contractor who allegedly embezzled from plaintiff,] stated it was a matter for civil court and refused to get involved.); id. at 24 ("Jeff Stout . . . post[ed] that he had known Grove Fire Chief Mike Reed for twenty years and 'is one of my best friends.'"). Plaintiff has not stated any facts establishing that Bohannon or Reed's conduct caused a constitutional

deprivation. Thus, all of plaintiff's § 1983 claims (counts 1-5) against Bohannon (defendant 13) and Reed (defendant 15) should be dismissed.

> c.  *RICO Claim*

The elements of a civil RICO claim are

> (1) investment in, control of, or conduct of (2) an enterprise (3) through a pattern (4) of racketeering activity. . . . 'Racketeering activity' is defined [as] any 'act which is indictable' under [the federal laws enumerated in 18 U.S.C. § 1961]. These underlying acts are 'referred to as predicate acts, because they form the basis for liability under RICO.'

Tal v. Hogan, 453 F.3d 1244, 1261 (10th Cir. 2006) (quoting BancOklahoma Mortgage Corp. v. Capital Title Co., 194 F.3d 1089, 1102 (10th Cir. 1999)). These predicate acts include bribery; bank fraud; counterfeiting; peonage, slavery, and trafficking in persons; interstate transportation of stolen property, and so forth. See 18 U.S.C. § 1961(1). Further, § 1961 defines "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity[.]" 18 U.S.C. § 1961(4). Finally, a "pattern of racketeering activity," which plaintiff must plead sufficient facts to plausibly establish, "requires at least two acts of racketeering activity[.]" 18 U.S.C. § 1961(5).

In his complaint, plaintiff states that the "enterprise consists of what can most charitably be characterized as a collection of out-of-state carpetbaggers who moved to Delaware County in order to conduct their various nefarious schemes . . . apparently . . . the District Attorney's Office is part and parcel of the Conspiracy and enterprises described herein." Dkt. # 2, at 28. The Court finds that plaintiff's complaint provides no "more than labels and conclusions," Twombly, 550 U.S. at 555, and plaintiff's conclusory allegations are "not entitled to be assumed true[,]" Iqbal, 556 U.S. at 664. Specifically, other than the District Attorney's Office, plaintiff does not state what other defendants

19

were part of the "enterprise" alleged in his complaint.  To plead sufficient facts to establish the enterprise element of a RICO claim, plaintiff was required to show that "a group of persons associated together for a common purpose of engaging in a course of conduct." United States v. Turkette, 452 U.S. 576, 583 (1981).  Moreover, plaintiff was required to show a pattern of racketeering activity, that is, plausibly establishing at least two predicate acts enumerated in the RICO statute.  Plaintiff pleads no plausible facts in his complaint as to any of the predicate acts, enumerated in § 1961(1), required to establish the pattern-of-racketeering-activity elements of a RICO claim.  Therefore, the Court finds that plaintiff's RICO claim (count 6) should be dismissed as to all defendants for failure to state a claim.

       *d.*    *ADA Claim*

Title II of the Americans with Disabilities Act (ADA) states "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A public entity includes "state and local government[s,]" as well as their "department[s], agenc[ies], . . . [and] instrumentalit[ies.]" 42 U.S.C. § 12131(1)(A)-(B).

The only facts in the complaint that could relate to an ADA claim are plaintiff's listed disabilities.  Dkt. # 2, at 5.  In his complaint, under the ADA heading, plaintiff writes "does the A.D.A. apply to the individuals and/or entities mentioned [in the complaint]?" Id. at 30.  A rhetorical question does not a claim state.  Notwithstanding, plaintiff does not state what type of ADA claim he is asserting, against whom, or how any of the defendants discriminated against plaintiff based on his disability.  Plaintiff pleads no facts that would suggest any inference of

discrimination based on his disability.  Therefore the Court finds that plaintiff has failed to state an ADA claim as to all defendants, and his ADA claim (count 7) should be dismissed.

## IV.

"[D]ismissal under Rule 12(b)(6) without affording the plaintiff notice or an opportunity to amend is proper only when it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile." Curley v. Perry, 246 F.3d 1278, 1281-82 (10th Cir. 2001) (citing Hall, 935 F.2d at 1110) (internal quotations omitted).  Allowing plaintiff an opportunity to amend would be futile here.  There exists no set of facts that would allow plaintiff to state a plausible claim under RICO (count 6) or the ADA (count 7) against any defendant.  Specifically, plaintiff's ADA heading contains only a rhetorical question as to whether the ADA applies in this circumstance, and plaintiff states no facts giving rise to the inference of discrimination based on his disability.  Further, plaintiff's RICO claim contains no facts establishing an enterprise or pattern of racketeering activity, and it is patently obvious to the Court that no set of plausible facts exists that would allow plaintiff to establish a proper RICO claim. Moreover, as to the § 1983 claims, no set of plausible facts exists that would allow plaintiff to establish state action as to Winston H. Connor, II (defendant 1), Stockwell & Connor, PLLC (defendant 2), Wyant Law Firm, PLLC (defendant 8), Jeff Stout (defendant 14), Reuben Hernandez (defendant 17), Hayley LNU (defendant 20), Grove Verizon Authorized Retailer (defendant 21), and Verizon Communications, Inc. (Defendant 22).  Next, as to Delaware County, Oklahoma (defendant 3), no set of plausible facts exists that would allow plaintiff to establish that he suffered a constitutional deprivation as a result of municipal custom or usage.  Finally, the remaining defendants are either immune or not suable entities; thus, it is patently obvious to the Court that there

are no amendments plaintiffs could make that would state a claim for relief under § 1983. Consequently, the Court will not grant plaintiff leave to amend.

**IT IS THEREFORE ORDERED** that defendants' motions to dismiss (Dkt. ## 12, 16, 29, 37, 48, 51, 53, 56, 57, 58, 59, 68) are **granted** for failure to state a claim.  A **judgment of dismissal** is entered herewith dismissing plaintiff's claims against **all defendants**.  All named defendants are hereby **terminated** as parties.

**IT IS FURTHER ORDERED** that defendants' motion to stay discovery (Dkt. # 92) and plaintiff's motion for clarification (Dkt. # 81) are **moot** in light of this Court's judgment of dismissal.

**IT IS FURTHER ORDERED** that all scheduling order deadlines, including the August 29, 2022 pretrial conference and the September 12, 2022 jury trial, are hereby **stricken**.

**DATED** this 21st day of December, 2021.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE